<u>NOT FOR PUBLICATION</u>

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA C. DAVIS, : | |
| : | Civil Action No. |
| Plaintiff, : | 07-1273 (NLH) |
| : | |
| v. : | |
| : | **OPINION** |
| MICHAEL J. ASTRUE, : | |
| COMMISSIONER OF THE SOCIAL : | |
| SECURITY ADMINISTRATION : | |
| : | |
| Defendant. : | |

**Appearances**:

DAVID S. BROSS
BROSS & GROUP, PA
102 BROWNING LANE
BUILDING C-1
CHERRY HILL, NJ 08004
*Attorney for Plaintiff*

TOMASINA DIGRIGOLI
SOCIAL SECURITY ADMINISTRATION
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278-0004
*Attorney for Defendant*

**HILLMAN, District Judge**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act. 42 U.S.C. § 401, et seq. The issue

before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that plaintiff was not disabled. For the reasons stated below, we reverse the decision of the ALJ and remand for further proceedings.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Sandra C. Davis, worked as a cashier and briefly as a switchboard operator, before the onset of her disability on October 9, 2002. Plaintiff alleges that she suffers from severe pain secondary to stress fractures in her heels, bilateral plantar fascitis, arthritis, carpal tunnel syndrome, anxiety and depression, and a severe cervical spine impairment.

Plaintiff applied for Social Security benefits on May 30, 2003, which application was denied. On June 16, 2005, a hearing was held before the ALJ in which plaintiff appeared with counsel and testified along with her life partner Andrew Frey. Richard Baine, a vocational expert, also appeared and testified. After the hearing, the ALJ determined that plaintiff was not disabled and denied her claim for benefits. Plaintiff appealed the decision, and the Appeals Council denied plaintiff's request for review.[1] Plaintiff now seeks this Court's review.

---

[1] After the request for review was denied, plaintiff filed a new application for benefits which was granted on June 22, 2007. The second application is not at issue here; we only address plaintiff's first application which was denied.

2

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health

3

& Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v.

4

Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.**    **Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific

5

job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis,

6

the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

   **C.   Analysis**

The ALJ concluded that plaintiff had not engaged in substantial gainful activity since October 9, 2002 (Step One) and that she suffered from the following severe impairments: bilateral plantar fascitis, arthritis, carpal tunnel syndrome and anxiety (Step Two).  The ALJ found, however, that plaintiff was not disabled because she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (Step Three), and because she had the residual functional capacity to perform her past relevant work (Step Four).  Since the ALJ found that plaintiff was not disabled, the analysis did not proceed to Step 5.

Plaintiff argues that the ALJ erred: (1) in failing to perform a function-by-function analysis in the formulation of the

residual functional capacity ("RFC"); (2) in failing to consider any functional limitations from the plaintiff's severe mental impairment, arthritis, or carpal tunnel syndrome in the formulation of RFC; (3) in determining plaintiff's credibility; (4) in evaluating the opinions and findings of the consultative examiner, Kenneth Goldberg, Ph.D.; (5) in failing to find the plaintiff's cervical spine impairment to be severe at Step Two; and (6) in finding that semi-skilled work that the plaintiff performed for one month was previous related work to which she could return.  With regard to the first five issues raised by plaintiff, we find that the ALJ did not err and affirm the decision.  However, because the ALJ's decision at Step 4 that plaintiff could perform past relevant work was not supported by substantial evidence, we reverse and remand.

    **1.**    **RFC Function-by-Function Analysis**

Plaintiff argues that the ALJ did not perform an adequate RFC assessment because he failed to do a function-by-function analysis as required by SSR-96-8p.

"[Residual Functional Capacity] is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  See SSR-96-8p.  "The RFC assessment is a

8

function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id.  The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Pearson v. Barnhart, 380 F.Supp.2d 496 (D.N.J. 2005) (citing SSR-96-8p).  The ALJ is required to provide this discussion in narrative form "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id.

We find that the ALJ properly performed the RFC assessment.  The ALJ stated that plaintiff's bilateral plantar fascitis and arthritis had not resulted in "an extreme limitation in the ability to walk, i.e., insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities."  The ALJ also found that plaintiff's carpal tunnel syndrome had not resulted in "the inability to perform fine and gross movements effectively" under listing in 1.00B2c (See Social Security Administration's Disability Evaluation Under Social Security (the Blue Book)).  The ALJ also found that plaintiff's anxiety had not resulted in any marked limitation in her ability

9

to perform daily activities, or maintain concentration or focus in a social setting.  Particularly, the ALJ noted that plaintiff currently was working as a part-time cashier, kept doctor's appointments, performed household chores, shopped and watched television.  The ALJ also noted from the medical reports that plaintiff had normal grip strength, full range of motion of all extremities, and ability to walk on her toes and heels.

Therefore, the ALJ engaged in the requisite function-by-function analysis in determining that plaintiff's impairments, including any related symptoms, did not cause physical or mental limitations or restrictions that would affect  her capacity to return to her past sedentary employment.  See Tuohy v. Commissioner of Social Sec., 127 Fed.Appx. 62, 66 (3d Cir. 2005) (finding ALJ's evaluation of activities related to plaintiff's employment showed that ALJ "...undertook an individualized review of all relevant evidence and engaged in a function-by-function assessment...").

**2.  Functional Limitations - Non-Exertional Limitations**

Plaintiff argues that since the ALJ decided that plaintiff could return to her past relevant work based on exertional considerations, he did not address plaintiff's non-extertional limitations with regard to her severe mental impairment, arthritis or carpal tunnel syndrome in the formulation of RFC.

10

According to SSR-96-8p,[2] analysis of exertional and non-exertional limitations are done at Step 5.  Here, the ALJ determined that plaintiff could return to her past relevant work and, therefore, did not reach Step 5.  Even so, the ALJ addressed some of plaintiff's non-exertional limitations and his decision is supported by the evidence.  For example, the ALJ referred to the psychological examination of plaintiff by Dr. Goldberg in July 2005 in which he wrote that plaintiff was appropriately dressed and well-groomed; that her sensorium was clear and speech pace normal; that she was oriented as to name, date and town in which the office was located; and that although plaintiff could benefit from psychotherapy, her condition was stable.  The ALJ noted that although Dr. Goldberg diagnosed plaintiff with panic disorder and some agoraphobia, plaintiff testified that she enjoyed numerous and varied activities of daily living, has her

---

[2] SSR-96-8p states:

At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level.  Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

own circle of friends, enjoys socializing with people at church, and is independent in self-care.  The ALJ's determination that plaintiff's activities did not comport with a diagnosis of panic disorder and agoraphobia is supported by substantial evidence.  Furthermore, although the ALJ notes plaintiff's symptoms of arthritis and carpal tunnel syndrome, he cites to the medical records which provide that plaintiff had normal hand/finger dexterity and strength.

Thus, plaintiff's argument that the ALJ did not address her non-extertional limitations fails because there is no requirement that the ALJ address Step 5 non-extertional factors at Step 3 or 4.[3]  In addition, there is substantial evidence in the record to support the ALJ's decision that plaintiff was not disabled by non-extertional factors.[4]

---

[3] Of course, if on remand, the ALJ decides to proceed to Step 5, the decision must include such analysis.

[4] Plaintiff also raises case law for the proposition that the "grid rules" cannot be used exclusively as a framework for decision making when an individual has a non-extertional limitation.  See Sykes, 228 F.3d at 270.  Here, again, however, this rule applies to Step 5 analysis which was not reached in this case because the ALJ determined that plaintiff had the residual functional capacity to perform her past relevant work at Step 4.  Plaintiff recognizes that this applies to Step 5 analysis and asks the Court to apply it to Step 4 without any supporting case law or justification for doing so.  We find no reason at this point to apply such analysis at Step 4 in this case and, therefore, decline to do so.  Furthermore, there is no evidence that the ALJ relied exclusively on "grid rules" regarding plaintiff's non-extertional limitations.

### 3. Credibility of Witnesses

Plaintiff argues that the ALJ failed to adequately consider the testimony of her domestic partner, Andrew Frey, and did not consider the witness' statements of her niece, Karen Heller, her neighbor, Katherine Morris, or her sister-in-law, Joan Davis.

Plaintiff's domestic partner, Andrew Frey, testified at the hearing before the ALJ.  The transcript shows that the ALJ questioned Mr. Frey at length regarding plaintiff's condition and abilities (R. 264-75).  The ALJ also states in his report that "... Andrew Frey, who has known [plaintiff] for 15 years stated that the claimant tries to do as much as she can."  The written witness statements dated a few days before the hearing were provided to the ALJ and made part of the administrative record. See Ex. 11E, 12E and 13E.

Plaintiff relies on Van Horn v. Schweiker, 717 F.2d 871 (3d Cir. 1983) in arguing that the ALJ erred in failing to state that he found the witness' statements incredible before he ignored their testimony.  Van Horn, is easily distinguishable from this case.  In Van Horn, the Third Circuit found that in order for the ALJ to have decided as he did, he "... must have ignored all of the evidence indicating that Van Horn was emotionally disabled and that this disability prevented him from working."  Id. at 873.  Here, the testimony of Mr. Frey and the written witness' statements generally state that plaintiff suffers from leg pain

13

and has difficulty walking.  It is clear from the ALJ's decision that plaintiff can only engage in employment that is strictly sedentary that he took all the evidence concerning plaintiff's leg pain into consideration.  In contrast, in Van Horn, the ALJ ignored *all* the medical reports and witness statements that the claimant was incapable of working because of his emotional problems in favor of his own conclusion that he was able to work. Id.  That is not the case here.

Therefore, there is no evidence that the ALJ did not consider Mr. Frey's testimony or assess the written witness' statements in making his determination that plaintiff could only engage in employment that was strictly sedentary.

### 4. Medical Opinion of Dr. Goldberg

Plaintiff argues that the ALJ substituted his own medical opinion for that of Dr. Goldberg, and criticizes the ALJ for accepting some of Dr. Goldberg's report but rejecting other portions of his report.

In his report, Dr. Goldberg diagnosed plaintiff with a panic disorder and agoraphobia.  Dr. Goldberg also stated that plaintiff's posture and gait were unimpaired and that he did not notice any obvious signs of difficulties walking.  The ALJ noted Dr. Goldberg's diagnosis regarding her mental condition but stated that plaintiff admitted that she engaged in various and numerous activities of daily living, had her own circle of

14

friends, socialized at church and was independent in her self-care.  The ALJ also noted that plaintiff was currently working part-time as a cashier, went to doctor's appointments, did household chores and went shopping.  Based on this evidence, the ALJ found that plaintiff presented mild restrictions in concentration and task persistence.  As such, the ALJ's conclusion that plaintiff's behavior does not support a diagnosis of panic disorder and agoraphobia is supported by substantial evidence.  See Ortega v. Commissioner of Social Sec., 232 Fed.Appx. 194, 198 (3d Cir. 2007) (finding that the ALJ noted that the cardiologist's opinion was "... unsupported by his own objective findings that Ortega could lift up to ten pounds and had no limitations on sitting-findings that were consistent with an ability to perform sedentary work.").

Moreover, although the ALJ remarked that Dr. Goldberg found plaintiff's posture and gait were unimpaired and that she did not show any obvious signs of difficulty walking, the ALJ did not rely on this statement as evidenced by his decision that plaintiff should only return to employment that is strictly sedentary.  Thus, the ALJ properly evaluated the report of Dr. Goldberg and his decision is supported by substantial evidence.

### 5. Cervical Spine Impairment

Although the ALJ found at Step Two that plaintiff's bilateral plantar fascitis, arthritis, carpal tunnel syndrome and

anxiety were severe impairments, plaintiff argues that the ALJ erred in failing to find that plaintiff's cervical spine impairment was severe as well.

"At step two, the impairment is severe if it limits the person's ability to do basic work activities; an impairment is not severe if it is a slight abnormality that has only a minimal effect on the claimant's ability to do basic work activities." Krzywoszyja v. Commissioner of Social Sec., 188 Fed.Appx. 152, 155 (3rd Cir. 2006) (citing 20 C.F.R. § 404.1521; Soc. Sec. Ruling ("SSR") 85-28; Ferguson v. Schweiker, 765 F.2d 31, 33 n. 2 (3d Cir. 1985)).

The ALJ notes that an MRI performed in June 2003 revealed moderate to marked foraminal stenosis on the left at C4-5 and C5-6 levels, small diffuse degenerative bulging disk from C3 to C7 interspaces but no herniation.  The ALJ states that plaintiff was prescribed conservative treatment for cervical spondylosis with radiculopathy.  The ALJ also noted that despite plaintiff's complaints, an examination of plaintiff done in October 2003 by Dr. Khona (for the New Jersey Department of Labor) stated that she had normal grip strength, full range of motion of all extremities, and ability to walk on her toes and heels, but could not squat.  The report also stated that there was no evidence of spasm, scoliosis, or tenderness of her feet on deep palpation. The ALJ further found that an examination of plaintiff by Dr.

Klein at the request of her attorney revealed cervical extension to be 50% of normal, equivocal for CTS, and no pain on ulnar or radial deviation.

Based on the above findings, the ALJ's decision not to describe plaintiff's cervical impairment as severe is supported by the record.  The evidence relied upon by the ALJ suggests that if plaintiff suffered an impairment, it had only minimal effect on her ability to do basic work activities.  Thus, the decision of the ALJ is supported by substantial evidence.

### 6. Relevant Past Work Experience

Finally, plaintiff argues that the ALJ erred in finding at Step 4 that she could return to her past work as a switchboard operator since the record does not establish that she held that job for more than one month before the onset of her alleged disability.  Plaintiff also states that she did not have enough time to learn the job and, thus, that employment should not have been considered by the ALJ as past relevant work.

During the hearing, the vocational expert described the job of switchboard operator to be totally sedentary and semi-skilled. According to Social Security Regulation ("SSR") 00-4p, "[a] skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (*requires more than 30 days to*

17

*learn*)"(emphasis added).  In addition, the Dictionary of Occupational Titles ("DOT") assigns a specific vocational preparation ("SVP") level of "3" to the job of switchboard operator.  A level 3 SVP requires "[o]ver 1 month up to and including 3 months" of preparation.

Plaintiff states on her disability report, Form SSA-3368, that she worked as a switchboard operator from September 2002 to October 2002. (R. 79).  During the hearing, it was determined that the last day plaintiff worked as a switchboard operator was October 9, 2002, which is also the onset date of her disability. (R. 230).  There is no evidence as to the start date of plaintiff's employment as a switchboard operator.  Relying on just "September 2002" as the beginning of plaintiff's employment, it is not clear that plaintiff worked for more than 30 days.  In order for employment as a switchboard operator, a semi-skilled job, to qualify as past relevant work, plaintiff must have worked in that position for more than 30 days.  Also, past relevant work requires that the work last long enough for the individual to learn to do the job. (R. 22 citing 20 CFR §§ 404.156(b), 404.1565, 416.960(b) and 416.965).  Therefore, the ALJ's decision that the switchboard position was past relevant work was not based on substantial evidence because it is not clear that plaintiff worked in that position for more than 30 days and worked long enough to learn the job.

18

In addition, at Step 4 the ALJ also referred to plaintiff's ability to work part-time as a cashier where she was able to sit on a stool for most of the time as evidence that she could work in such a position for forty hours, five days a week. As noted by the ALJ, he did not consider this part-time employment to be past relevant work because in order for employment to be past relevant work it must be "substantial gainful activity" (R. 21 - earnings from employment must be above a specific level set out in the regulations - citing 20 CFR §§ 404.1574, 404.1575, 416.974 and 416.975).

Therefore, the ALJ erred at Step 4 in finding that plaintiff could return to her job as a switchboard operator because it is not clear that plaintiff worked in that position for more than 30 days as required by the regulations. Also, plaintiff's employment as a part-time, sit-down cashier does not qualify as past relevant work because it was not substantial gainful activity. Thus, the ALJ's decision that plaintiff could return to past relevant work is not supported by substantial evidence and must be reversed.[5]

---

[5] We express no opinion whether work as switchboard operator qualified as past relevant work if it is established on remand that the plaintiff worked such a job for more than 30 days. We also express no opinion on what import her prior work as a cashier and switchboard operator would have on any Step 5 analysis the ALJ may undertake on remand.

19

### III.  CONCLUSION

For the reasons expressed above, the decision of the ALJ is reversed and the matter remanded for further consideration.  An accompanying Order will be issued.

```
                               s/Noel L. Hillman
                             NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey
```